```
                    IN THE UNITED STATES BANKRUPTCY COURT
                       FOR THE SOUTHERN DISTRICT OF IOWA


IN RE:                              )
                                    )         Chapter 7
MARIA DAWN NELSON,                  )
                                    )
     Debtor.                        )         Bankruptcy No. 05-03134
------------------------------
MARIA DAWN NELSON                   )
                                    )         Adversary No. 05-30131-pjk
     Plaintiff,                     )
                                    )
vs.                                 )
                                    )
TG COLLECTIONS and                  )
TEXAS GUARANTEED STUDENT            )
LOAN CORPORATION,                   )
                                    )
     Defendants.                    )
```

**ORDER RE: DETERMINATION OF DISCHARGEABILITY
OF STUDENT LOAN DEBT**

This matter came before the undersigned on June 13, 2006 for trial on the Complaint to Determine Dischargeability of Debt. Steven R. Hahn appeared for Debtor/Plaintiff Maria Dawn Nelson. David P. Miller appeared for Defendants TG Collections and Texas Guaranteed Student Loan Corporation. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Debtor seeks discharge of her student loans on the grounds of undue hardship pursuant to 11 U.S.C. § 523(a)(8). Defendants assert Debtor can repay her student loans without suffering undue hardship.

**FINDINGS OF FACT**

Debtor Maria Nelson accumulated student loan debt during the period of 1984 to 1992 in pursuit of three degrees, a Bachelor's Degree in Business, a Bachelor's Degree in Environmental Health, and a Master's Degree in Health Education. Some of her education expenses were paid for through the G.I. Bill. Debtor reported that the loans were approximately $32,000 when she left college. She consolidated these loans in 1995. Debtor never found employment related to her education. At some point after

completing her education, she began working for a seed corn factory. Approximately six years ago, she began working for her current employer, Metro Group. Debtor is 48 years old.

Debtor is currently experiencing health problems which limit her earning capacity. She has been diagnosed with interstitial lung disease and dyspnea on exertion. Debtor uses oxygen to supplement her normal breathing when she is at home or when she needs to move significant distances. She is restricted to light lifting in her job. She currently sorts mail for her employer and reports no problems in completing her job-related tasks. When asked about her prognosis, Debtor reported that the doctors have given her no timeline regarding her health condition.

Debtor introduced two exhibits into evidence regarding her health. Debtor is an Air Force veteran and receives treatment from the VA Medical Center in Iowa City. Debtor was discharged from the Air Force with a ten percent disability. Whether the military disability is related to Debtor's current illness is unclear. The first exhibit contains Progress Notes from December 2005 and January 2006. In these notes, Debtor was diagnosed in December with dyspnea on exertion but had stable oxygen saturation with supplemental oxygen. In other words, Debtor was experiencing low lung volume that required supplemental oxygen if she exerted herself. Debtor had apparently been experiencing these symptoms for the past couple of years. The notes also indicate that her heart is enlarged, though it isn't apparent whether this condition impacts on her lung condition or otherwise impairs her daily life functions. Debtor was directed to return for additional tests the following month.

In January 2006, Debtor's physician developed a treatment plan for her. The physician expected that she would respond favorably to a treatment of systemic steroids. The note further indicates that she would likely need to be on this treatment for at least a year. The note called for Debtor to return for a follow-up visit with her physician three months later to assess the effectiveness of the treatment. Debtor did not provide any records of a follow-up visit, if such visit occurred. At five months into the treatment, Debtor has provided no evidence of progress in her lung health (or lack thereof) with the use of the systemic steroid.

In the second exhibit, Debtor provided a copy of a pathology report dated May 15, 2006 confirming the diagnosis of interstitial lung disease. Based on the evidence submitted by Debtor, her health condition has not impacted her ability to continue to work for her current employer. In summary, the medical record indicates that Debtor has a health ailment that limits her employment prospects. The medical record indicates some optimism about her current treatment and no indication that

2

Debtor's health is deteriorating in a manner that will lead to permanent disability in the near-term.  Since Debtor has provided no evidence beyond her testimony which would substantiate a finding of impending deterioration of her ability to continue her employment, the Court is unable to determine the precise severity of Debtor's illness.  The Court can note that her current health is at a level which allows her to continue her current employment.

Debtor testified she has also been advised by a doctor that she cannot take on employment that requires her to look at a computer screen all day.  This condition does not seem to affect her current employment, but could impact her prospects for other employment.

The financial dimensions of this case are less than clear.  When filing her petition, Debtor estimated that Defendants held unsecured claims worth $64,500.  Counsel for Defendants asserted that the claims total approximately $55,000, reduced in part by prior garnished monthly payments of $160 per month.  When asked at the hearing about the difference between the amount Debtor listed on her petition and the amount owed as asserted by the Defendants, Debtor provided no explanation for the difference nor an explanation for how she calculated the amount of student loan debt for purposes of completing her petition.

Debtor's petition shows 2003 income of $26,364 and 2004 income of $27,080.  Debtor's 2004 income included $917 in unemployment insurance benefits.  Debtor testified that her income has remained about the same for 2005 and the first five months of 2006.  Debtor stated that her income has not dropped since 2004.  Debtor also testified that she makes approximately $10 per hour.  Assuming she works full-time at $10 per hour, her annual wages would be in the vicinity of $20,800 per year.  This disparity is not explained in the record.  However, income tax return data is subject to verification by the Internal Revenue Service by comparing an individual's report of income with data provided by employers about each employee's income.  With those verifications in place, the Court will conclude, based on the preponderance of the evidence, that the income tax returns accurately reflect Debtor's annual earnings.

Debtor also confirmed that her reported income did not include a monthly untaxed VA benefit of approximately $112 per month.  Debtor testified that she had been continuously receiving disability payments from the Veteran's Administration since her discharge in 1984.  Debtor failed to report receiving these monthly assistance payments on Schedule I (Current Income of Individual Debtor) in her petition.

**CONCLUSIONS OF LAW**

3

The Bankruptcy Code excludes most student loans from the list of debts eligible for discharge "unless excepting such debt from discharge under the paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The debtor must prove the existence of undue hardship by a preponderance of the evidence. In re Cheney, 280 B.R. 648, 659 (N.D. Iowa 2002).

Courts have struggled to define "undue hardship" in the absence of a statutory definition. In re Long, 322 F.3d 549, 554 (8th Cir. 2003). The Eighth Circuit standard for examining undue hardship in the context of discharging student loans is the "totality of the circumstances" test. In re Reynolds, 425 F.3d 526, 532 (8th Cir. 2005). The test has three factors:

1. the debtor's past, present, and reasonably reliable future financial resources;

2. a calculation of the debtor's and her dependent's reasonable necessary living expenses; and

3. any other relevant facts and circumstances surrounding each particular bankruptcy case.

Id. The first factor, concerning debtor's financial resources, "will require a special consideration of the debtor's present employment and financial situation-including assets, expenses, and earnings-along with the prospect of future changes-positive or adverse-in the debtor's financial position." Id.

Debtor is currently employed. Given her health condition, her employment prospects are reasonably limited to continuing in her current position or seeking similar work for similar pay. Debtor failed to establish that she is, or will soon become, disabled. Debtor is not currently disabled, and the Court is unable to assess, with certainty, Debtor's future health status. The Court concludes for purposes of the first factor that Debtor will continue to earn income at a level commensurate with her 2003 and 2004 income tax returns plus approximately $1,300 per year in untaxed VA benefits into the foreseeable future.

Debtor's Schedule I lists monthly gross income of $1,698 or $20,376 per year. Based on Debtor's 2004 reported income of $27,080 and her testimony that her income had not decreased since 2004, the Court will rely upon Debtor's reported tax income. In order to calculate Debtor's probable after-tax income, the Court has made the following assumptions: $27,000 in gross income, subtracting a standard deduction of $5,000, a personal exemption of $3,200 and student loan interest deduction (maximum) of

4

$2,500[1], leaves taxable income of $16,300.  According to the 2005 federal tax tables, a single person would then owe $2,144.  Debtor would also have FICA withholding of $2,066 (7.65%) and state income tax of approximately $1,200.  Thus, Debtor's estimated income tax burden would be approximately $5,410 per year and her after-tax earnings should be approximately $21,590 or $1,800 per month.  With an additional $112 per month in VA benefits, Debtor's net income is approximately $1,912 per month.

The second factor, concerning debtor's living expenses, requires a determination of what expenses are "reasonable and necessary."  In re Long, 292 B.R. 635, 638 (B.A.P. 8th Cir. 2003).  In this context, "reasonable and necessary" means that such expenses are "modest and commensurate with the debtor's resources."  In re Balm, 333 B.R. 443, 448 (Bankr. N.D. Iowa 2005).  So long as expenses are reasonable, "debtor is not expected or required to implement every conceivable cost-saving measure."  In re Schulstadt, 322 B.R. 863, 867 (Bankr. N.D. Iowa 2005).

Based on Debtor's Schedule J (Current Expenditures for Individual Debtors) filing, total housing costs for mortgage, utilities and maintenance are approximately $493.  None of Debtor's expenditures seem unreasonable, with the possible exception of transportation expenses estimated at $300 per month.  While this amount is high if viewed independent of a car payment, the Court recognizes that Debtor has not listed a car payment elsewhere in Schedule J.  At the hearing, Debtor reported a car payment of approximately $200 per month.  The Court finds it reasonable that $300 per month is necessary for Debtor's transportation expenses including a car payment.

Debtor left the Air Force with a ten percent disability.  As a disabled veteran, Debtor has been using the Veteran's Administration Medical Center in Iowa City as her primary medical care provider.  Debtor lists both $200 as a monthly payroll deduction for insurance on her petition and an additional $150 per month for medical and dental expenses for a total of $350 per month, or $4,200 per year.  Defendant did not challenge Debtor's claim.  Ordinarily treatment in veteran's hospitals is low-cost, if not free.  Since the Court is obliged to operate within the confines of the record, however, the Court will give Debtor the benefit of the doubt on the reasonableness of these expenses.

---

[1] Debtor will be eligible for $2,500 in student loan interest deductions to the extent that pays at least $2,500 in interest towards her student loan debt.  Since she has $55,000 in student loan debt, even a five percent interest rate will generate more than $2,500 in annual interest.

5

After examining each income and expense listed on Debtor's petition filing, the Court can look at the total picture. Debtor has estimated monthly after-tax income of $1,912 and estimated monthly expenses of $1,501. Thus, Debtor has approximately $411 in monthly disposable income.

The third factor, concerning relevant facts and circumstances, allows flexibility for the court to consider a number of factors. These factors include:

1. the debtor's good faith effort to repay the loan, or a debtor's bad faith in non-repayment,

2. whether the debtor has made a good faith effort to obtain employment, maximize income, and minimize expenses, and

3. whether the debtor is suffering truly severe, even uniquely difficult financial circumstances, not merely severe financial difficulty

Schulstadt, 322 B.R. at 867. Debtor left college with student loans in the amount of approximately $32,000 in 1992. Given the fact that the outstanding loan amount has risen more than 70% over the years, Debtor appears to have made few payments. The Court also takes notice of Debtor's involuntary wage garnishment for several years prepetition. That is, Defendants had to seek a court order to get any payment of loan debt. Since Debtor's income and expenses do not appear to have fluctuated significantly in the past six years that she has worked at her current employer, there is little evidentiary support to substantiate a finding of good faith efforts to repay the student loans. In terms of maximizing income and minimizing expenses, Debtor's record is mixed. Given her present health status, Debtor can reasonably be credited with maximizing her employment currently. However, her high level of education, including a master's degree in health education, indicates that in years prior when she was in good health, she was probably not maximizing her income potential. Her underemployment may have played a contributory effect in the growth of the outstanding student loan debt. Debtor's living expenses appear to be modest and reasonable, with a few exceptions. While $55,000 in student loan debt is a significant amount with which to contend, Debtor does not have a "truly severe" financial situation, particularly in light of her estimated monthly disposable income.

The Reynolds court summarized application of the totality of the circumstances test as follows: "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt-while still allowing for a minimal standard of living-then the debt should not be

6

discharged." Reynolds, 425 F.3d at 532.  The record is silent as to the present outstanding loan amount, the interest rate applicable to such debt, and available repayment options.  The Court will therefore makes its determinations in general terms.

In summary, it is clear that Ms. Nelson has a chronic health condition.  The Court is not unsympathetic to this fact.  Her condition may deteriorate in the future into a disabling condition.  However, at this time, the record does not mandate this conclusion.  The standard to be met in these cases is very high.  Plaintiff has not met that standard.  Applying the Reynolds standard, since Debtor has sufficient disposable income while maintaining a minimal standard of living, Debtor's student loan debt should is not dischargeable.

## CONCLUSION

The Court finds Debtor has not meet her burden of proof by a preponderance of the evidence to demonstrate that she would suffer an undue hardship in repaying her student loans.  The Court finds that she has sufficient monthly disposable income and stable employment to repay the loans.

**WHEREFORE,** Debtor's Complaint to Discharge Student Loan Debt is DENIED.

DATED AND ENTERED:
   June 22, 2006

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE